# CASES

## ARGUED AND DETERMINED

### IN THE

# Supreme Court of South Dakota

## IRWIN et al. v. LATTIN et al.

Where an order denying a motion for a new trial is made after judgment is entered, an appeal from the judgment alone does not bring up the order for review.

Unless the order denying a new trial is appealed from, either independently or brought up on appeal from the judgment, the sufficiency of the evidence to sustain a finding or verdict cannot be reviewed.

Under Code Civ. Proc. § 463, providing that questions of fact decided by the court or referee may be reviewed when exceptions to the findings have been duly taken by either party and returned, the exceptions to findings by the court must specify the particulars in which the evidence does not sustain the finding, in order to review the question.

Since Prob. Code, § 47, provides that, in probate contest, the court must render judgment, either admitting the will to probate or rejecting it, the only matters adjudicated upon probate of a will are that the will is duly executed and attested, was not procured by fraud, that testator has sufficient mental capacity and authority to dispose of his property, that the attesting witnesses were competent, and that the evidence sustained the probate; and the capacity of a beneficiary to take property is not adjudicated by probate, and hence cannot be considered on appeal from a judgment denying probate.

The court found, in probate proceedings, that at the time of the execution of the purported will testatrix was a person of unsound mind and incapable of rationally understanding her duties and obligations toward society or her friends, and unable to form a rational desire as to the disposition of her property, and that at that time, and long prior thereto, she was insane and the victim of insane delusions, and that her attempted testamentary disposition was induced by such delusions; and the findings further stated that testatrix was a spiritualist, and believed that her acts, including the execution of the will, were directed by departed spirits. **Held,** that

the findings sustained a judgment denying probate on the ground of want of testamentary capacity.

A belief in spiritualism is not of itself evidence of insanity, preventing the execution of a valid will, though an insane delusion may arise out of a religious belief.

To invalidate a will, an insane delusion must be operative in the testamentary act.

That a testamentary disposition may be regarded by others as foolish, unusual, or unjust does not necessarily invalidate it as the product of an incompetent testator.

(Opinion filed, April 2, 1912.)

Appeal from Circuit Court, Kingsbury County. Hon. ALVA E. TAYLOR, Judge.

Proceedings by L. E. B. Irwin and others against Sarah V. Lattin and others. From a decree for plaintiffs, defendants appeal. Affirmed.

*D. A. Crawford,* for appellants. *Warren & Warren,* for respondents.

SMITH, J. On the 22d of December, 1904, Mary J. Bumgarner, a resident of Kingsbury county, in this state, made a will, devising her property, real and personal, to the National Spiritualists' Association of the United States, with headquarters at Washington, D. C.; said property, or the proceeds thereof, to be used by said association for spiritualist work. On the 26th day of March, 1908, she was adjudged incompetent by the county court of Kingsbury county, in a guardianship proceeding in which the plaintiff F. M. Andrews was appointed guardian of her estate. On the 8th day of February, 1909, she was adjudged insane by the commissioners of insanity of Kingsbury county and committed to the Hospital for the Insane at Yankton, where she remained until her decease, February 25, 1910. She left surviving her as next of kin a sister, Mrs. Irwin, one of the plaintiffs in this action. On the 24th of March, 1910, the heirs, Mrs. Irwin, and her husband joined in a conveyance of a quarter section of land in Kingsbury county, which is the subject of this litigation, to the former guardian, Frank M. Andrews. Mrs. Irwin and Andrews join as plaintiffs in this action. The defendant Sarah B. Lattin is the executrix of the last will of Mary G.

Bumgarner. On the 22d of March, 1910, Sarah B. Lattin filed a petition in the county court for probate of the will. Mrs. Irwin and F. M. Andrews filed objections to the probate of the will, alleging that the deceased, at the time of the execution thereof, was mentally incompetent; that at the time of the execution of the will 'she was an insane person, a victim of insane delusions, and lacked testamentary capacity; that she was a believer in the doctrine of spiritualism, which had so worked upon her mind that at the time of the execution of the will, and long prior thereto, she was insane, and in the making of said will was acted upon and coerced by insane delusions to such a degree that said will was not a voluntary act on her part. Appellant's answer placed in issue the testamentary capacity of the deceased. On the trial, the county court entered an order and judgment, denying probate of the will on the ground that the testatrix lacked testamentary capacity, and was insane, and a victim of insane delusions which directly influenced her in making the will. An appeal was taken to the circuit court, where the issue was again tried, and on April 3, 1911, the circuit court entered findings of fact and conclusions of law in conformity with the decision of the county court, denying probate of the will. This appeal is from the proceedings at the trial in the circuit court.

Appellant's brief wholly fails to conform to the requirements of chapter 15, Laws of 1911, in that it does not contain a statement of the facts or of the assignments of error, nor of the proceedings at the trial, essential to an understanding of the questions sought to be reviewed on this appeal. The brief contains only allusions and references to certain portions of the bill of exceptions, where such matters are supposed to be found. This practice will not be recognized by this court, but, as indicated in one of our recent decisions, because of the unsettled condition of the practice under the provisions of chapter 15, Laws of 1911, we shall not refuse to consider appeals already taken without a proper compliance with the law. We shall therefore consider the questions presented by the record as before us on this appeal.

The case was tried to the court, without a jury, on the sole issue of testamentary capacity of the deceased, and findings of

fact, conclusions of law, and a judgment were entered by the trial court on April 6, 1911. This appeal is from the judgment "and the findings of fact and conclusions of law in connection therewith." On May 5, 1911, appellant served and filed notice of appeal, and on May 20, 1911, perfected the same by serving and filing an undertaking. On May 3, 1911, appellant served notice of motion for new trial, and on August 28, 1911, about three months after the appeal was perfected, the trial judge entered an order denying a new trial, which was filed on August 29, 1911. A transcript of the evidence and proceedings at the trial was procured by appellant, which was certified by the trial judge on the 1st day of September, 1911, and filed in the office of the clerk on the 5th day of September, 1911. This appeal is from the judgment and the findings of fact and conclusions of law in connection therewith, and no appeal is taken from the order denying the motion for a new trial. This appeal, therefore, must be considered as though there had been no motion for new trial.

[1, 2] This court has held that, "when the motion for a new trial is made *and determined* before a judgment is entered in the action, an appeal from the judgment brings up the order of the court, denying or granting a motion for a new trial, as an intermediate order that can be reviewed by this court, providing the decision of the court, denying or granting a motion, is assigned as error. * * * But when the order, denying or granting a new trial, is made after judgment in the action, an appeal from the judgment alone does not bring up such order made after judgment. * * * Unless the order, denying or granting a new trial, made after judgment, is appealed from, either in connection with the appeal from the judgment or independently, the decision of the court below upon the question of the sufficiency of the evidence to justify the finding or verdict will be res adjudicata." This rule has been many times announced by this court. In Foss v. Van Wagenen, 20 S. D. 41, 104 N. W. 606, after citing a large number of decisions of this court, it is said: "Following the rule laid down in these cases, this court must disregard the evidence in the case upon this appeal from the judgment alone, and decide the case upon the judgment record alone."

It appears from the record on this appeal that the order denying a new trial was made and filed three months or more after the appeal from the judgment had been perfected, and that the motion was founded, in part, upon insufficiency of the evidence to sustain the findings of the trial court, and the precise insufficiency of evidence stated in the motion for a new trial is restated in the assignments of error upon this appeal; and appellant, without appealing from the order, denying a new trial, again seek to review the sufficiency of evidence to sustain the findings of fact. In the motion for a new trial, insufficiency of the evidence to sustain the findings is thus specified: "That (1) finding No. four (4) is not supported by the evidence. (2) That finding No. five (5) is not supported by the evidence. (3) That finding No. six (6) is not supported by the evidence." The assignments of error upon this appeal are in identical language. It is thus apparent that the question of insufficiency of the evidence was presented to the trial court and decided adversely to appellant; and that no appeal has been taken from such ruling. The ruling of the trial court has therefore become the law of the case upon this appeal, and the question of the sufficiency of the evidence to justify the finding is res adjudicata, and cannot be reviewed.

[3] It is not necessary, at this time, to decide whether the sufficiency of the evidence might be reviewed upon exceptions to the findings of fact, with sufficient specifications of the particulars in which the evidence is deemed insufficient, together with proper assignments in this court. But even if that question were before us, the assignments of error in the record contain no specifications of the particulars in which the evidence is insufficient to sustain the findings; and for that reason the insufficiency of the evidence would not be reviewed. In the case of Boettcher v. Thompson, 21 S. D. 169, 110 N. W. 108, an action to determine adverse claims to real property, tried by the court, where appellant sought to review the sufficiency of the evidence to sustain the findings, this court said: "That under the rule prescribed by the statute and followed by this court in numerous decisions, the sufficiency of the evidence to sustain the decision in this action could not be reviewed, if the statement of the case did not contain

proper specifications of the particulars wherein such evidence was alleged to be insufficient. * * * Only in the last paragraph is there any specification of any particulars in which the evidence is alleged to be insufficient to sustain the findings of fact made by the trial court, and, as was said in our former decision, the limitation issue was immaterial," etc. In the case of McPherson v. Swift, 27 S. D. 296, 130 N. W. 768, the sufficiency of the evidence to sustain the findings of the trial court was sought to be reviewed, and this court said: "Though the assignments of error occupy 49 closely printed pages, they nowhere specify any particular wherein the evidence is insufficient to justify this finding. Nor does the appellant's brief, consisting of 166 pages, anywhere point out any particular in which the evidence is insufficient to justify the same. So this finding must be sustained." In McNish v. Wolven, 22 S. D. 621, 119 N. W. 999, Justice Corson says: "There being in this case no specification of the particulars in which the evidence is insufficient to justify the findings, and no specification of the errors of law that will be relied on, it was the duty of the trial court to disregard the same on the hearing of the motion; and this court will presume, therefore, that that court did so disregard it, and denied the motion for a new trial on that ground. It was not only the duty of the trial court to disregard the bill of exceptions for the reasons stated, but it is also the duty of this court to disregard it. This question has been considered in a number of cases in this court, and it has uniformly held that, when the bill of exceptions or statement fails to specify the particulars in which the evidence is insufficient, or the particular errors of law relied on, such statement or bill of exceptions should be disregarded by the court."

Precisely the same rule is applicable under section 463, Code of Civil Procedure, which provides that questions of fact, decided upon trials by the court or by referee, may be reviewed in the appellate court when exceptions to the findings of fact have been duly taken by either party and returned. Where the sufficiency of the evidence to sustain the findings of the trial court is to be reviewed upon exceptions to the finding, such exceptions must specify the particulars in which the evidence is insufficient to sus-

tain the finding, precisely as is required when the same question is presented upon a motion for a new trial. Whenever a review of the sufficiency of the evidence to sustain a verdict of a finding of fact by a trial court, either upon a motion to direct a verdict, upon a motion for a new trial, or upon exceptions to findings of fact, is sought, it is essential that the particulars in which the evidence is insufficient be specified and pointed out in the motion or exception, with proper assignments of error in this court. No appeal having been taken from the motion denying a new trial, and no sufficient assignments being contained in the record, in this case, we cannot review the evidence, and must assume that the same is sufficient to sustain the findings of the trial court.

Certain of the assignments also challenge the competency of evidence received at the trial over appellant's objections. We have carefully examined these assignments, and are satisfied none of them constitute reversible error.

The only remaining question before us is whether the judgment is sustained by the findings of fact. The issue tried was as to the testamentary capacity of the deceased at the time of the execution of the will. The findings of the trial court are as follows:

"(4) That at the time of the execution of the said purported will, the said Mary G. Bumgarner was a person of unsound mind, mentally and physically decrepit, and incapable of rationally understanding or comprehending her relative duties and obligations toward society or relatives or friends, and unable to form or hold a rational desire regarding the disposition of her property, by will or otherwise.

"(5) That at the time of the execution of the said purported will, and long prior thereto, the said Mary G. Bumgarner was an insane person, and was then and there the victim of various and divers insane delusions, and that the testamentary disposition of her property, attempted to be made in the said will, was controlled, governed, and induced by the said insane delusions of the testatrix.

"(6) That at the time of the execution of said purported will, and for several years prior thereto, the said Mary G. Bumgarner

was possessed of the belief that she had frequent and continual communications with departed spirits, and that the said spirits should and did give to her directions regarding all her actions in the ordinary affairs of life, and that she was obliged to and did follow the directions supposed by her to have been given by the said guiding spirits. That she was further possessed of the belief, during all of said times, that she had been directed by the said guiding spirits to give and bequeath all her property at death to the National Spiritualists' Association of the United States, which said association is named as the sole devisee in said purported will, and that the said devise was made because of her belief that it was necessary for her to comply with the supposed directions of said departed spirits. That by reason of the said belief the said testatrix did not execute the said purported will as her free and voluntary act, but as the result of the inducement and coercion of the said departed spirits, and that the said belief operated as duress and undue influence upon said testatrix, and that the execution of said will was controlled, and the beneficiary therein directed, through the duress and undue influence upon testatrix of the supposed departed spirits, as above set forth, and that said beneficiary would not have been named but for the supposed direction of the said departed spirits."

Appellant's counsel concedes that, if deceased had testamentary capacity to make the will in issue, there would be absolutely no grounds to support any allegation of undue influence.

[4] Certain suggestions are made in appellant's brief as to the incapacity of the National Spiritualists' Association to become the beneficiary under the will. That question, however, was not before the trial court, and cannot be reviewed or determined upon this appeal. Upon a proceeding to probate a will, the only matters to be adjudicated are that the will is duly executed and attested; was not procured by fraud; that the testator had sufficient mental capacity to make a will, and had authority to dispose of his property by will; that the attesting witnesses, where required, were competent and credible; and that the evidence was sufficient to sustain the probate. In re Thompson's Estate, 26 S. D. 576,

128 N. W. 1127; In re John's Will, 30 Or. 494, 47 Pac. 341, 50 Pac. 226, 36 L. R. A. 242; In re Murphy's Estate, 104 Cal. 554, 38 Pac. 543; Hathway's Appeal, 46 Mich. 326, 9 N. W. 435; Farmer v. Sprague, 57 Wis. 324, 15 N. W. 382; Greenwood v. Murray, Executor, 26 Minn. 259, 2 N. W. 945; In re Jones' Estate, 84 Wis. 465, 54 N. W. 917. The only judgment which can be entered by the probate court in such proceedings is one either admitting the will to probate, or rejecting it. Section 47, Probate Code.

[5-7] The assignment of error "that the court erred in entering judgment against the appellant and in denying the will to probate" challenges the sufficiency of the findings to sustain the judgment. We are clearly of opinion that the findings of the trial court sustain the judgment. The contention that the want of testamentary capacity is based only on the fact that the deceased was a believer in spiritualism is not sustained by the language of the findings. Appellant's counsel is right in his contention that a belief in spiritualism, however strong, is not in itself an evidence of insanity, and that an insane delusion, to be fatal to the validity of a will, must be operative in the testamentary act. Whether religious views, commonly entertained by a considerable number of persons, are true or false is not a subject for judicial inquiry. As has been frequently said, the courts are without adequate means of producing evidence on a question of this character, or to determine the value of such evidence. In Scott v. Scott, 212 Ill. 597, 72 N. E. 708, it is said: "The great majority of civilized human beings believe in the existence of a life beyond the grave. Based upon that belief, many religious creeds, differing widely, have been established. The fact that an individual holds any particular belief in regard to a future state of existence cannot of itself be evidence of an insane delusion or of monomania. An insane delusion is a belief in something impossible in the nature of things, or impossible under the circumstances surrounding the afflicted individual, and which refuses to yield either to evidence or reason. Riggs v. A. M. H. Society, 35 Hun [N. Y.] 656; State v. Lewis, 20 Nev. 333 [22 Pac. 241]; Rush v. Megee, 36 Ind. 80. We have heretofore said that 'insane delusion

consists in the belief of facts which no rational person would have believed.' Schneider v. Manning, 121 Ill. 376 [12. N. E. 267]; Nicewander v. Nicewander, 151 Ill. 156 [37 N. E. 698]. Such a delusion does not exist, unless it is one whose fallacy can be certainly demonstrated; for, except such demonstration can be made, it cannot be said that no rational person would entertain the belief. Consequently, no creed or religious belief, in so far as it pertains to an existence after death, can be regarded as a delusion, because there is no test by which it can be tried, and its truth or falsity demonstrated. Gass v. Gass, 3 Humph. [Tenn.] 278; Orchardson v. Cofield, 171 Ill. 14 [49 N. E. 197, 40 L. R. A. 256, 63 Am. St. Rep. 211]; Buchanan v. Pierie, 205 Pa. 123 [54 Atl. 583, 97 Am. St. Rep. 725]." There is, however, a broad distinction between any religious belief and insane delusions which may grow out of such belief and control the testator in the disposition of his property; and this distinction applies alike to all religious beliefs and denominations.

[8] It is also true, as contended by appellant's counsel, that a testator may make what others may regard as a foolish, unjust, or unusual will, and still not be vulnerable to a charge of insanity or a lack of testamentary capacity, for the reason that the existence of the right to dispose of property by will is not made dependent upon a judicious exercise of the right itself. But where a testator is possessed of an insane delusion which controls the testamentary act, and leads him to dispose of his property under the coercion of such delusion, the act cannot be said to be that of a sane mind. The trial court found that at the time of the execution of the will, and for several years prior thereto, the testatrix was possessed of the belief that she had frequent and continual communication with departed spirits, who gave her directions regarding all her actions in the ordinary affairs of life; that she was obliged to follow, and did follow, the directions given her by them, and that she had been directed by said spirits to give and bequeath all her property to the Spiritualists' Association; that by reason of said belief the testatrix did not execute the will as her free and voluntary act, but that the same was the result of the inducement and coercion of departed spirits; and that said bene-

ficiary would not have been named but for the supposed direction of the departed spirits.

In McClary v. Stull, 44 Neb. 175, 62 N. W. 501, the court says: " 'Law,' it is said, 'is of the earth, earthy,' and that spirit wills are too celestial for cognizance by earthly tribunals—a proposition readily conceded. And yet the courts have not assumed to deny to spirits of the departed the privilege of holding communion with those of their friends who are still in the flesh, *so long as they do not interfere with vested rights, or by means of undue influence seek to prejudice the interest of persons still within our jurisdiction.*"

In re Randall, 99 Me. 396, 59 Atl. 552, the court says: "Some persons believe that they have communications from and interviews with the spirits of deceased persons. This may be a delusion, and is so regarded by many; but, unless such supposed communications control the disposition of property, the believer in them is not thereby rendered incompetent to make a valid will."

In La Bau v. Vanderbilt, 3 Redf. Sur. (N. Y.) 384, the court says: "The evidence of the decedent's belief in modern spiritualism was not admissible as tending to show his mental unsoundness, unless it should appear that the will or codicil was an offspring of that delusion."

In Rice v. Rice, 53 Mich. 432, 19 N. W. 132, it is held that delusions which are not connected with or have no effect upon the testamentary act are not sufficient to invalidate a will. Ramsdell v. Ramsdell, 128 Mich. 110, 87 N. W. 81, Chambers v. Brady, 100 Iowa, 622, 69 N. W. 1015, and In re Motz's Estate, 136 Cal. 558, 69 Pac. 294, sustain this view.

In O'Dell v. Goff, 149 Mich. 152, 112 N. W. 736, 10 L. R. A. (N. S.) 989, 119 Am. St. Rep. 662, the court says: "One accepts his religious faith on evidence that is satisfactory to his mind. A court of law will never inquire whether that faith is sound or unsound. It does not possess* the machinery for executing such an undertaking. It will content itself with saying—and that is sufficient for the purposes of this case—that one's

religious faith affords no evidence of insanity.  It does not follow, however, that one may not have such a faith in spiritualism as to destroy his testamentary capacity.  He may think so continually and persistently upon this subject, as upon many other subjects, as to become a monomaniac, incapable of reasoning where this subject is concerned.  In that case, it should be said that a will, made in consequence of such monomania, is void for lack of testamentary capacity.  Orchardson v. Cofield, 171 Ill. 14, 14 N. E. 197, 40 L. R. A. 256, 63 Am. St. Rep. 211.  So, too, a believer in spiritualism may have such extraordinary confidence in spiritualistic communications—whether those communications reach him through mediums, or are received by him, as he believes, directly—that he is impelled to follow them blindly and implicitly, his free agency is destroyed, and he is constrained to do against his will what he is unable to resist.  A will made under such circumstances is obviously not the will of testator, and is therefore not admissible to probate.  We need not speculate as to the ground upon which this conclusion rests.  It is utterly unimportant whether it rests upon the ground of absence of testamentary capacity, or, as held by the trial court, upon the ground of undue influence.  See, also, Robinson v. Adams, 62 Me. 369, 16 Am. Rep. 473.  It is sufficient to say that a will brought about by an influence which the testator *could not resist is not his will.*"

We are clearly of opinion that the findings of the trial court sustain the conclusions that the testatrix was not of sound and disposing mind at the time of the execution of the will, and that the same was not her free, voluntary, and conscious act.

The judgment of the trial court is affirmed.

WHITING, J., took no part in this decision.