# IN RE ESTATE OF FLEEGE

FLEEGE et al., Appellents v. FLEEGE, Respondent

(230 N.W.2d 230)

(File No. 11383. Opinion filed May 23, 1975)

**Donley & Murphy, John F. Murphy,** Elk Point, for contestants and appellants.

**Brady, Kabeiseman, Light & Reade, Frank J. Brady,** Yankton, for proponent and respondent.

COLER, Justice.

This case involves a contest of the will of Harry Fleege who died on November 11, 1972, in Union County, at 80 years of age. He had not married and died without issue leaving as heirs at law one brother and four sisters who are the contestants and appellants herein and certain named, but perhaps not all, nieces and nephews who would take by virtue of SDCL 29-1-7 (Uniform Probate Code 2-103(3) ) were the will denied probate. The will of the decedent dated July 17, 1958, leaving the entire estate to one nephew, Jules Fleege, and naming him executor, was admitted to

probate on June 28, 1973, and the contestants appealed contending the trial court erred in failing to find that undue influence on the part of the beneficiary voided the will. SDCL 29-2-5, Uniform Probate Code 3-407.

We affirm.

The contestants take the position, (1) that the disposition of decedent's property to a nephew rather than brothers and sisters constitutes an unjust and unnatural disposition, and (2) the fact that subsequent to the execution of the will it was kept secret from all heirs at law except the sole beneficiary raises a presumption, in either event, of undue influence which places the burden on the proponent to overcome a presumption of undue influence.

The question of unjust or unnatural disposition of property under a will giving rise to a presumption of undue influence has been considered by this court not infrequently on prior occasions. The uniform line of decisions clearly allies this state with other states where "testator's collateral heirs, such as brothers, sisters, nephews and nieces, may not be considered natural objects of his bounty, notwithstanding they would take by intestacy". 3 Bowe-Parker: Page on Wills § 29.108; In Re Rowland's Estate, 1945, 70 S.D. 419, 18 N.W.2d 290; In Re Blake's Estate, 1965, 81 S.D. 391, 136 N.W.2d 242; In Re Anders Estate, 1975, 88 S.D. 631, 226 N.W.2d 170. See also Storman v. Weiss, 1954, N.D., 65 N.W.2d 475. Contestants, having no greater claim to the testator's bounty than respondent, are not entitled to the presumption claimed.

> "A testator has the privilege and right to dispose of his property as he chooses within limits and in the manner fixed by statute. The law does not require that he recognize his relatives equally or at all. It does not place obstacles in the way of the aged or infirm in the disposition of their property, provided their mentality meets accepted tests at the time of execution of the testamentary instrument and the same was not procured by the exercise of undue influence." (citations omitted) In Re Blake's Estate, 1965, 81 S.D. 391, 136 N.W.2d 242.

■ In Johnson v. Shaver, 1919, 41 S.D. 585, 172 N.W. 676, this court said the keeping of a secret from those who have an equal right to know is a badge of undue influence. Subsequent decisions of this court have modified that rule and so limits its application as to make it unavailable to contestants in this proceeding. In Re Armstrong's Estate, 1937, 65 S.D. 233, 272 N.W. 799; In Re Estate of Hobelsberger, 1970, 85 S.D. 282, 181 N.W.2d 455.

■ In admitting the will of Harry Fleege to probate the trial court necessarily found that the proponent of the will had met his burden of proof to establish competency on the part of the testator and due execution of the instrument, and, contrary to contestants' position, that the testator was not acting under his own free will but under undue influence. The scope of our review in this case is well established:

> "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." SDCL 15-6-52(a).

As is permissible in will contests the trial court allowed considerable latitude in the admission of evidence, however remote, in relationship to the time of execution of the will, which tended to bear on the issue of relative competency and undue influence. In Re Blake's Estate, supra.

The record herein covers a span of 60 years and well discloses the lives, business endeavors and family relationships of three generations of the Fleege family. This court can but briefly relate salient facts supporting the decision of the trial court. The assets of the estate consisted of two quarters of land in Union County, South Dakota. One quarter, referred to as the "home place," the testator inherited from his father, and the "other farm" the testator inherited from a deceased brother, Arnold Fleege, who in turn had inherited that quarter section of land by virtue of the father's will and assignments to him by his brothers other than Harry, who had no interest, and his sisters of their interest to that quarter section. The contestants may have felt it more reasonable for the testator to will it to them and there was

testimony to the effect that at one time Harry Fleege agreed with Arnold to make reciprocal wills, which Arnold did but Harry did not. "That a testamentary disposition may be regarded by others as foolish, unusual, or unjust does not necessarily invalidate it as the product of an incompetent testator." Irwin v. Lattin, 1912, 29 S.D. 1, 135 N.W. 759, Ann.Cas. 1914C, 1044. It was the property of Harry Fleege and was subject to his will.

The proponent, Jules Fleege, was left motherless at 18 months of age, at a time when the testator would have been approximately 17 years of age, and was taken in by his paternal grandparents to be raised. In his early years he shared as his home that of the testator and the testator's parents and the various aunts and uncles who were also living there during those years. Following the death of Jules Fleege's grandparents, the various aunts and uncles, including the testator and contestants, raised and cared for Jules and saw to his education through high school from which he graduated in 1926. Although much of his elementary and secondary education was in Sioux City, where he stayed with two of his aunts, the "home farm" was still home to him during school vacations.

■ The record adequately reflects that the testator and the beneficiary under his will remained on good terms throughout the testator's lifetime. The relationship does not, at any time preceding or at the time of execution of the will, show that Jules Fleege had a confidential relationship with the testator or that he in fact exerted influence to instigate the making of the will, to seek preference for himself, or that he in any manner participated in the preparation of the will. In Re Hobelsberger, supra; In Re Metz' Estate, 1960, 78 S.D. 212, 100 N.W.2d 393; Swanson v. Swanson, 1928, 54 S.D. 42, 222 N.W. 491. The will was prepared in the office of a long-time friend and attorney of the testator in Beresford, South Dakota, Roscoe Frieberg, who testified as to the testamentary competency of the testator and to the execution of the will but took no further part in those proceedings.

The trial court understandably gave the attorney's testimony considerable weight and was justified in doing so.

While there is evidence in the record that testator drank, sometimes to excess, and that he had a limited education, thus restricting his ability to read and write, he was not by virtue of these shortcomings incompetent to make his will and manage his farm properties, which he did manage at the time of the execution of the will and for several years thereafter. In Re Blake's Estate, supra. Mr. Frieberg's testimony clearly established that, within the standard set forth in Peterson v. Imbsen, 1923, 46 S.D. 540, 194 N.W. 842, the testator's physical and mental well-being at the time of the execution of the will was such that, notwithstanding Harry Fleege's infirmities or shortcomings, he was capable of comprehending his possessions and had an intelligent perception and understanding of the disposition he wished to make of it and of the persons that he desired should be recipients of his bounty and gifts, and to recollect and apprehend the nature of the claims of those who are excluded from participating in his bounty.

Judgment is affirmed.

All the Justices concur.